RUEHLMAN, EXRX., ET AL, *v.* ARCHIABLE, ET AL.

(No. 2541—Decided March 24, 1965.)

*Mr. Clement T. Romer, Jr.,* for plaintiff Romer.
*Mr. John M. Bullock,* for plaintiff Ruehlman.
*Mr. William H. Fry* and *Mr. Robert M. Galbraith,* for defendant Eleanora H. Archiable Anning.

DAVIES, J.   In their petition, Grayce A. Reuhlman and C. T. Romer, co-executors of the estate of George W. Archiable, deceased, have asked the court to construe Items 12 and 13 of said decedent's will and Item 14 of a codicil thereto dated November 20, 1957.

The testator, George W. Archiable, died on March 23, 1964, survived by his second wife, May B. Archiable, his daughter, Grayce A. Ruehlman, and two minor grandchildren, George Wesley Archiable, Jr., and Joan Archiable, children of his deceased son, Wesley Archiable.   Grayce A. Reuhlman and Wesley Archiable are children of the testator's first marriage.

The inventory value of the decedent's probate estate is $391,972.74, consisting of realty in the amount of $19,500, and personalty in the sum of $372,472.74.   The decedent also owned Kentucky real estate valued at $15,000, making a total probate estate valued at $406,972.74.   The decedent died possessed of non-probate assets valued at $359,894.05, consisting of assets in a revocable Archiable Trust created by the decedent for the

benefit of Grayce A. Ruehlman or her children valued at $308,-574; joint and survivorship accounts, the survivor being Grayce A. Ruehlman, valued at $25,574.11; and life insurance proceeds, payable to Grayce A. Ruehlman, valued at $25,565.94. The combined probate and non-probate assets of the decedent's estate at the time of his death were valued at $766,866.79. The debts and costs of administration of the decedent's estate are estimated to total $36,461.93.

The widow, May B. Archiable, made an antenuptial agreement with the decedent by the terms of which she took only the decedent's one-half interest in certain real estate valued at $17,-500. She also received a cash bequest of $100.

Since the Ohio inheritance and the federal estate taxes will be levied upon successions to probate and non-probate properties passing to or for the use of the persons designated in the testator's will or in instruments created for their benefits, the court is first asked to decide whether or not the language contained in George W. Archiable's will and the codicil thereto dated November 20, 1957, is sufficient to authorize the payment out of the property of said estate the total Ohio inheritance taxes and the federal estate taxes, including such amounts as may be attributable to the property which is not a part of the probate estate. If there were no non-probate assets and only probate assets in the decedent's estate, it is estimated that the federal estate tax would amount to $74,138.31. By including the non-probate assets, it is estimated that the total federal estate tax on probate and non-probate assets would total $180,567.07. An apportionment of this tax between the probate and non-probate assets would result in a tax of $91,168.02 levied against the non-probate assets and a tax of $89,399.95 levied against the probate assets. If, of course, there is no apportionment of the tax, the whole $180,567.07 would be levied against the probate assets.

Item 13 of the testator's will provides that after the payment of all debts, the cost of administering said estate, the Ohio inheritance taxes and the federal estate taxes, the residue of the estate is devised: one-half to Grayce A. Ruehlman individually and one-half to the First National Bank of Cincinnati, in trust, to become a part of an irrevocable living trust created on December 8, 1935, by the testator by the terms of which one-half of the trust was to be distributed to Grayce A. Ruehlman upon

the trustor's death and the other half being distributable to the children of the deceased son, Wesley Archiable. This irrevocable trust is not subject to the payment of Ohio inheritance tax or federal estate tax.

In Item 14, the testator nominated his daughter, Grayce, to be executrix under his will, authorizing and empowering her to sell at public or private sale, on the best terms obtainable, any of his property, real, personal and mixed for the purpose of paying any debts and funeral expenses and the cost of administration, including the payment of all taxes.

The codicil, dated November 20, 1957, nominated the daughter, Grayce A. Ruehlman and Clem T. Romer to be co-executors of the will, and empowered the executors to sell at public or private sale any of the testator's property, real, personal, or mixed for the purpose of paying debts and funeral expenses and administration of the estate, including the payment of all taxes.

Both in Ohio and in other jurisdictions courts have dealt with many cases which have involved problems of fixing state and federal inheritance and estate taxes and in determining upon whom the burden of paying such taxes shall be placed.

In the construction of George W. Archiable's will and codicil, as is true in the construction of all wills, the court must remember that the cardinal rule of interpretation of a will is to ascertain and give effect to the intention of the testator. 56 Ohio Jurisprudence 2d Wills, Section 519, page 46.

What, then, was the intention of this testator in regard to the payment of the federal estate and Ohio inheritance taxes which would be fixed in the administration of his estate because of his death? Did he intend that all of such taxes should be paid out of his probate assets, or did he intend that there should be an apportionment in the payment of such taxes between the beneficiaries of his non-probate assets and the beneficiaries of his probate property, and, in either event, did he intend that the payment of the taxes assessed against the probate assets should be paid only by his residuary beneficiaries? His will (Item 13) provides that ''after the payment of all my debts, the cost of administering said estate, the Ohio inheritance taxes and the federal estate taxes, I give, devise and bequeath all of the rest, residue and remainder of all of my property, real, personal and mixed, of whatsoever nature

and kind, and wheresoever situate and wheresoever found to my executrix, hereinafter named, and I hereby direct that the residue remaining in the hands of my executrix be divided in two equal parts; one-half of the remainder of said residue to be paid to my daughter, Grayce A. Ruehlman, individually, and the remaining half of said resdue to the First National Bank of Cincinnati, in trust, to become a part of the trust created in my lifetime for the benefit of my son and daughter and their children as hereinabove set forth.''

In the codicil to his will, after nominating fiduciaries, he authorizes and empowers them to sell at public or private sale on the best terms obtainable, any of his property, real, personal, or mixed, for the purpose of paying his debts and funeral expenses and administration of his estate, including the payment of all taxes. There is also a reference to the payment of taxes in Item 12 of his will, which will hereinafter be discussed.

In the case of *In re Estate of Gatch,* 153 Ohio St. 401, the court was called upon to interpret an item of the decedent's will, very similar to the language in the Archiable will and codicil, which provided that ''I direct that all my just debts and funeral expenses be first paid out of my estate, and I further direct that all taxes, both state and federal shall be a charge against the principal of my estate and shall be paid therefrom and shall not be charged against the interest of any distributee.'' The court was required to decide if it was the testator's intention to direct that federal estate taxes resulting from the inclusion of the proceeds of life insurance policies not payable to his estate be paid out of the assets of his estate. The court held that the testator did not so direct (p. 403), but had in mind the estate of which he was disposing and did not intend to benefit the policy beneficiaries at the expense of those named in the will. The court concluded that ''Where there is no specific direction in a testator's will that the federal estate tax on such part of the federally computed estate as properly arose from proceeds of policies of insurance on the life of the decedent is to be paid out of the decedent's estate, such portion of the tax due to the inclusion of the proceeds of life insurance is not a debt of the decedent or his estate in computing the net Ohio estate under the Ohio Inheritance Tax Law,'' and that ''Under Section 826(c), Title 26, U. S. Code, a liability for that part of the federal estate tax paid

due to the proper inclusion of the proceeds of life insurance payable to other than the executor (or surviving spouse) is created against such beneficiary in favor of the executor of decedent's estate.'' The holding in the *Gatch case* has been followed in *In re Estate of McKitrick*, 85 Ohio Law Abs. 323, and *In re Estate of Kilroy*, 86 Ohio Law Abs. 366.

In *McDougall* v. *Central National Bank*, 157 Ohio St. 45, it was held that where assets outside of the probate estate are included in a decedent's taxable gross estate for estate tax purposes and such inclusion increases the federal estate tax and where the decedent has expressed no intention by will or otherwise as to the ultimate impact of that tax, an equitable portion of the burden of the federal estate tax should be apportioned against such assets outside of the probate estate, in the absence of a state statute requiring a different result. It was also held that as to all assets included in a decedent's estate for estate tax purposes, whether probate or non-probate assets, the liability of those who take such assets to discharge the estate tax represents a liability to discharge a common obligation, and that in the absence of any apparent intention of such decedent to the contrary, one who pays more than his share of that common obligation is entitled to contribution from those who have not paid their share.

We find, based upon the court's finding in the *Gatch case, supra,* that it was the intention of George W. Archiable, as shown by the language used by him in his will and codicil thereto, that an equitable portion of the federal estate and Ohio inheritance taxes should be apportioned against the non-probate assets which were included with the probate assets of his estate in determining the total federal estate and Ohio inheritance tax liabilities.

The court, having found that there shall be an apportionment of taxes between the beneficiaries of the probate and nonprobate assets in the decedent's estate, is now asked to decide how the debts, costs of administration, federal estate tax, and Ohio inheritance taxes shall be paid.

The evidence shows the following assets and the estimated debts, costs of administration, and (probate) federal estate tax due in the decedent's estate:

Assets, as shown by inventory:
| | |
|---|---:|
| Ohio Real Estate | $ 19,500.00 |
| Kentucky Real Estate | 15,000.00 |
| Cash | 76,820.69 |
| U. S. Treasury Bonds | 7,709.55 |
| Corporation Bonds | 3,162.25 |
| 89 shares Arco Electric Stock @ $1,304.50 | 116,100.50 |
| Other Corporation Stocks | 168,679.75 |
| | |
| Total Probate Assets | $406,972.74 |

Specific devises and bequests:
| | | |
|---|---:|---:|
| Real Estate | $ 34,500.00 | |
| 89 shares Arco Electric stock (Grayce A. R.) | 116,100.50 | |
| Cash bequests | 26,100.00 | |
| 25 shares Archiable Electric Stock | 19,530.00 | |
| | | |
| Total | | $196,230.50 |
| Total in residue before paying debts, costs, and taxes | | 210,742.24 |

After payment of the specific bequests, which, as shown above, total $196,230.50, the following property constitutes the residue of the estate:
| | |
|---|---:|
| U. S. Treasury Bonds | $ 7,709.55 |
| Corporation Bonds | 3,162.25 |
| Other Corporation Stocks | 149,179.75 |
| Cash | 50,720.69 |
| | |
| | $210,742.24 |

Estimation of Debts, Costs and Taxes:
| | | |
|---|---:|---:|
| Debts | $ 13,487.65 | |
| Costs of Adminstration | 22,974.28 | |
| Federal Estate Taxes on Probate Estate | 89,399.95 | |
| | | |
| | $125,861.88 | |

The Ohio Inheritance Taxes have not been determined or estimated.

In Item 13 of his will, the testator provided that after the payment of all his debts, the cost of administering his estate, the Ohio inheritance taxes, and the federal estate taxes, one-half of the residue and remainder of all of his property shall be paid to his daughter, Grayce A. Ruehlman, and the other half shall be paid to the First National Bank of Cincinnati, in trust, to become a part of the trust created in his lifetime for the benefit of his (deceased) son, Wesley Archiable, and his daughter, Grayce, and their children.

The codicil, dated November 20, 1957, to the testator's will authorized and empowered his co-executors "to sell at public or private sale on the best terms obtainable, any of my property, real, personal, or mixed, for the purpose of paying my debts and funeral expenses and administration of my estate, including the payment of all taxes * * *."

Item 12 of the testator's will provides, in part, as follows:

"I give and bequeath all of my stock in The Arco Electric Company, an Ohio corporation, to my daughter, Grayce A. Ruehlman, to be hers absolutely and forever, if she is living at the time of my death.

"However, in the event that should it become necessary to obtain additional cash for the purpose of paying taxes and the cost of administration of my estate, I direct that my said daughter shall sell said stock in The Arco Electric Company to The Archiable Electric Company at the book value thereof for the purpose of paying the state and federal estate taxes and the cost of administration of my estate, and to apply the proceeds of said sale for that purpose."

As shown in the above computation of the assets, estimated debts, costs of administration, and taxes due in the decedent's estate, after payment of the specific cash bequests, there remains a total of $50,720.69 cash in the residue of the decedent's estate, which amount of cash is insufficient to pay the taxes and costs of administration of the decedent's estate.

The court, after reviewing the evidence, studying the briefs submitted by counsel, considering the applicable law, and carefully reading the testator's will and codicil, believes that the following conclusions represent the expressed intention of the testator relative to the mode of payment of the debts, costs of

administration, federal estate tax and Ohio inheritance taxes connected with the administration of his estate:

Conclusion I: An equitable portion of the federal estate tax and Ohio inheritance taxes shall be apportioned against the non-probate assets which were included with the probate assets of his estate in determining the total federal estate and Ohio inheritance tax liabilities.

Conclusion II: The cash ($50,720.69) in the residue of the estate shall be applied on the payment of the costs of administration, estimated to be $22,974.28, the federal estate tax, estimated to be $89,399.95, and all Ohio inheritance taxes.

Conclusion III: Under the provisions of Item 12 of the will, the co-executors are required to sell as much of the stock in the Arco Electric Company to the Archiable Electric Company at the book value thereof, or all of said stock, if necessary, to obtain additional cash (the amount in excess of $50,720.69) necessary to pay the costs of administration, the federal estate tax, and all Ohio inheritance taxes.

Conclusion IV: The co-executors shall sell "at public or private sale on the best terms obtainable" any of the property in the residue of the estate necessary to pay the debts, estimated to be $13,487.65, of the decedent, and to provide "additional cash," as defined in the aforementioned Conclusion III, to pay the balance, if any, of the total amounts of the costs of administration, the federal estate tax, and the Ohio inheritance taxes.

Conclusion V: Grayce A. Ruehlman is entitled to receive the (shares of) stock in The Arco Electric Company which need not be sold to obtain "additional cash," as defined in the aforementioned Conclusion III, to pay the total costs of administration, the federal estate tax, and Ohio inheritance taxes, which Ohio inheritance taxes shall be imposed upon only those shares of stock in The Arco Electric Company which are not required to be sold as aforesaid, and which are actually distributed to Grayce A. Ruehlman.

*Judgment accordingly.*